## Hays, Appellant, *v.* Stewart.

*Vendor and vendee—Marketable title—Incumbrance—Right of removing coal from other property—Hand money.*

1. The vendor of land cannot convey a good marketable title where it appears that there is an outstanding right in another person to remove coal from other lands through the land in question; such a right is an incumbrance, and if it is unknown to the vendee, and he did not buy subject to the same, he will be entitled to recover the hand money which he paid at the time the contract was executed.

2. An incumbrance is every right to, or interest in the land which may subsist in third parties to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.

Argued April 20, 1911.  Appeal, No. 125, April T., 1911, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1908, No. 447, on verdict for defendant in case of Joseph A. Hays v. John Newton Stewart, also called J, N. Stewart.  Before RICE, P. J., HENDERSON, HEAD, BEAVER and PORTER, JJ.  Reversed.

Assumpsit to recover hand money.  Before SHAFER, J. The facts are stated in the opinion of the Superior Court. Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* among others was in refusing binding instructions for plaintiff.

*James G. Hays,* for appellant.

*Edward J. I. Gannon,* with him *Kennedy, McVicar & Haslett,* for appellee.

OPINION BY HENDERSON, J., July 13, 1911:

This action was brought to recover the hand money paid by the plaintiff on a contract for the purchase of a farm.  The declaration set forth an agreement in writing for the sale of the farm signed by the defendant and an

averment that the title was defective by reason of incumbrances, the existence of which relieved the plaintiff from the contract and entitled him to a return of the money paid. The agreement is in the following form:

"TARENTUM, PA., Aug. 20, 1907.

"Mr. Jos. A. Hays,

"Swissvale, Pa.

"Dear Sir:

"I agree to let you have my farm of 132 acres (more or less) for $4,500.00. Of this amount $300.00 is to be paid down as hand money, allowing you 90 days to look up deeds. If said deed is not marketable, I am to return the $300.00 paid me. On receipt of $300 I will send deed so your lawyer can look it up. I am to receive $2,500 on delivery of deed (after it is looked up) & will take a mortgage of $1,700 for the balance.

"Very Truly Yours,

"J. N. STEWART."

The plaintiff accepted this proposition and paid the $300 as provided therein and thereupon the defendant sent to the plaintiff a former deed for the farm to be submitted to his attorney in connection with a search of the title. At the trial evidence was offered of numerous incumbrances on the property, among which was a reservation in the conveyance from Robert Kennedy to the defendant of the coal under the premises. In addition to the reservation of the coal, together with the right of way into and under the land at such point or points and in such manner as may be reasonable and necessary for the purpose of digging, mining and carrying away the same, there was the following reservation: "And also with the privilege of mining and removing* through said premises other coal belonging to said party of the first part, his heirs or assigns." Another incumbrance was an oil and gas lease in force at the time the contract was made. There was also a right of way for a pipe line in

use by a gas company and an outstanding contract for the sale of the timber growing on the farm. On information from his attorney of the character and extent of these incumbrances the plaintiff declined to take the land and demanded his money back. The defense set up was that the contract on which the money was paid was in fact a parol contract made prior to the date of the writing set forth in the plaintiff's declaration; that the plaintiff went onto the farm in company with the defendant and his agent and was there informed that the coal did not belong to the defendant; that the timber had been sold; that a gas company had a lease on the farm and was then operating a gas well or wells thereon; that the pipe line was pointed out to the plaintiff and notice given to him that a right of way had been granted to the company owning the line; that after having this information the plaintiff expressed himself satisfied with the land and the price and agreed to take the same; that the paper of August 20, 1907, was not written to show the agreement between the defendant and the plaintiff but in response to the plaintiff's request that he would send him an agreement "to give the man a good deed or give back his money" as stated by the defendant; that the plaintiff wanted an agreement in writing as to the time to look up the title and make the payments. The plaintiff admitted that he had notice that the coal was reserved, that some of the timber was sold and that a gas lease was in existence, but denied that he knew the terms under which the various rights were held and he denied knowledge of the existence of the right of way for the pipe line. The learned trial judge regarded the evidence as conclusive that the plaintiff entered into a parol contract before the twentieth of August, 1907, and that he had knowledge of the fact that the coal did not belong to the defendant, that all the timber was sold and that the oil lease was in force, but submitted to the jury the question whether he knew that there had been a grant of a right of way for the pipe line. If we concede that the evidence was suffi-

cient to support the conclusion that the conversation between the parties on the farm at the time the plaintiff was there looking at it amounted to an absolute agreement to buy and sell rather than a negotiation which they intended to consummate by the execution of a writing and that the plaintiff was affected by notice of the visible incumbrances and those to which his attention was called by the defendant it does not appear anywhere in the evidence that he knew that there was not only a reservation of the coal made by the defendant's grantor but that there was in connection therewith a reservation of the privilege of mining and removing through the farm other coal belonging to the first party, his heirs or assigns. This privilege had no connection with the coal on the farm in question and no implication of its existence arises from the reservation of the coal under the land which is the subject of the contract. That the retention by Kennedy of the right to use the farm for the transportation of coal from other tracts of land created an incumbrance is manifest. The point was expressly decided in Pegg v. Rist, 15 W. N. C. 70. In that case there was a reservation of the coal with a right to remove the same or to remove coal or minerals from adjacent or other tracts of land over the land in question. The deed containing this reservation was recorded at the time of the contract out of which the action arose and could have been seen by the purchaser, but it did not appear that he consented to take the land subject to that incumbrance. It was accordingly held that the contract did not bind the purchaser. An incumbrance has been defined to be "every right to or interest in the land which may subsist in third parties to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance:" Rawle on Covenants for Title, sec. 75. This includes of course liens, easements or servitudes which are adverse to the holder of the fee. Such incumbrances are not consistent with a good and marketable title. They have a tendency both to limit the enjoyment of the property and to depre-

ciate its market value. Herman v. Somers, 158 Pa. 424, was quite like the case before us as to the obligation of the vendor to convey a good title. That was also an action to recover hand money paid on a defective title. If, therefore, the plaintiff was bound to the consequences of the known and disclosed incumbrances as claimed by the defendant there is no warrant for concluding that he had knowledge of the use to which the land could be subjected by Kennedy or his heirs or assigns in the transportation of coal from other lands across this farm, and the plaintiff was not bound to take such a title under the circumstances disclosed. As the defendant denied his liability to give any other title than that actually existing and it appears from the conceded facts that he is unable to do so because of the outstanding right in the reservation made by Kennedy when he conveyed to the defendant the plaintiff was entitled to binding instructions, and this having been refused he was entitled to judgment non obstante veredicto. It is conceded that the amount paid by the plaintiff was $300 and that the expense of his examination of the title was $100 and that if entitled to recover, interest was due from August 23, 1907.

The judgment is therefore reversed and the rule for judgment for the plaintiff non obstante veredicto is reinstated and the record remitted to the court below that judgment may be entered in accordance with this opinion.