## Snaman, Appellant, *v.* Berardino.

Argued April 14, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John Wray Connolly,* for appellant.

*Owen S. Cecil,* with him *Jos. B. Hetherington,* for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

This is an action in assumpsit to recover for loss alleged to have been sustained by the plaintiff by reason of defendant's refusal to consummate an agreement for sale of real estate. Defendant filed a counterclaim for hand money paid to the plaintiff, which hand money had been credited to defendant's account by plaintiff in establishing the amount of plaintiff's claim, as also for the amount paid by defendant for examination of title. The case was tried before DITHRICH, J. and a jury. The court gave binding instructions to the jury in favor of the defendant, both as to plaintiff's claim and defendant's counterclaim. Plaintiff moved for judgment in his favor non obstante veredicto and for a new trial which motions were overruled in an opinion by the trial judge. This appeal followed.

At the trial of the case it appeared that plaintiff and defendant had on March 17, 1930, entered into an agreement in writing for the sale and conveyance by plaintiff to defendant of a certain lot or piece of ground situate in the Township of Penn, Allegheny County, in fee simple, clear of all encumbrances, for the consideration of four thousand dollars, payable, two hundred dollars upon signing of the agreement, eight hundred dollars at the time of delivery of the deed on or before May 1, 1930, one thousand dollars in one year thereafter and two thousand dollars in three years thereafter; deferred payments to be secured by "judgment bond and tight mortgage on the premises." Two hundred dollars was paid at the time of signing the agreement.

The statement of claim averred that at defendant's request, plaintiff extended the time for closing to June 1, 1930; also that prior to June 1, 1930, defendant gave notice to plaintiff that defendant elected to rescind the agreement, and that he would refuse to accept plaintiff's deed for the premises if and when tendered. Both averments were admitted in defendant's affidavit of defense.

Defendant's affidavit denied that plaintiff was ready and able to grant, convey and assure to defendant in fee simple, free and clear of all encumbrances, the said property, and averred that the title of plaintiff was defective and insufficient on account of the fact that the coal and mining rights appurtenant thereto, underlying the said lot of ground, had been and were conveyed away by prior owners thereof, and were not owned by plaintiff; also that the land was subject to certain oil and gas leases in and upon said premises held by the Peoples Natural Gas Company. Defendant also filed a counterclaim in the sum of two hundred and forty dollars, with interest from June 1, 1930, covering the two hundred dollars hand money paid as aforesaid, and forty dollars paid by defendant for attorney's fees for examination of title.

At the trial of the case, it appeared that on or about June 12, 1930, notwithstanding the alleged prior notice of rescission by defendant, the parties met at the office of Joseph B. Hetherington, Esq., defendant's attorney for the purpose of closing the deal. Defendant denied that he had notified plaintiff prior to said date that he would not accept a deed for the property and testified that he had with him a certified check for the amount due on the date for settlement.

The deed which plaintiff had prepared and tendered at this meeting contained a reservation of the coal and gas rights hereinbefore referred to, and defendant for that reason refused to consummate the deal.

Plaintiff testified that he had the assurance from both the Pittsburgh Coal Company and the Peoples Gas Company that they would execute releases; that the Pittsburgh Coal Company wanted $50 for the release, but that the Peoples Gas Company would not require any payment whatever. No releases, however, had been obtained.

The court sustained objections ex parte defendant to the offers of plaintiff to show the value of these encumbrances or reservations in the title. Plaintiff testified that after the refusal of defendant to take the property plaintiff sold it to another party and sustained a loss of $507.52. At the conclusion of the testimony, the court refused binding instructions in favor of plaintiff and directed a verdict in favor of defendant for the amount of the hand money paid and the amount expended in examination of the title.

Appellant contends because of the alleged notice of rescission prior to the first day of June, 1930, plaintiff was relieved from the obligation of tendering defendant a deed clear and free of all encumbrances. The question of attempted rescission is of no importance in view of what occurred thereafter. Quoting from the opinion of the trial judge: "Furthermore, plaintiff, when asked by his counsel (Q). What was the purpose of the pending conference on June 10th or thereabouts? answered (A). The purpose was to close the deal. Q. Although you had already received a notice he had elected to rescind? A. Yes; we kept after that and nursed them all the way through in order to get them to take the property and *finally they agreed again they would take it."* (Court's Italics).

The sole question is whether defendant was required to accept the deed tendered at the meeting on or about June 12th. The title tendered was not one free and clear of all encumbrances as provided under the agreement of sale. There was a reservation in the deed ten-

dered of coal and mining rights as also oil and gas leases thereon. No attempt had been made to remove them. This was not a compliance with the agreement of sale. These reservations and exceptions were not merely pecuniary charges. They went to the very essence of the title agreed to be conveyed. The distinction is pointed out in the case of *Tiernan et al. v. Roland & Blackstone,* 15 Pa. 429, at p. 441: "The distinction is between a defective title, and a good title encumbered with a pecuniary charge. Equity will not compel the vendee to take the former, but the latter presents no objection, provided the purchaser can be protected from it: *Fourcan v. Campanion,* 1 Yer.; 2 Moll. 583; *Thompson v. Carpenter,* 4 Barr 132."

*Hays v. Stewart* 47 Pa. Superior Ct. 440, was an action to recover hand money paid by plaintiff on a contract for the purchase of a farm. At the trial, evidence was offered of numerous encumbrances on the property, among which was a reservation in the deed to the defendant of coal under the premises, as also a gas lease in force at the time the contract was made. It was held in an opinion by Judge HENDERSON that the vendor of land cannot convey a good marketable title where it appears that there is an outstanding right in another person to remove coal from other lands through the land in question; and that such a right is an encumbrance, and if it is unknown to the vendee, and he did not buy subject to the same, he will be entitled to recover the hand money which he paid at the time the contract was executed.

As stated in 57 A. L. R. Ann. 1426: "It is, however, the general rule that a contract to convey a fee simple title is not complied with, where there exists an easement upon the land, if the full enjoyment of the premises is thereby precluded. Even though an easement is comparatively only a slight hindrance to the full enjoyment of the land by the purchaser, yet the certainty of its existence renders it such a burden on

the land that the purchaser is not obliged to accept the title offered by the vendor under a contract to convey a fee simple title."

As stated in the opinion of the court below: "Thus there was presented to the court a clear case where plaintiff failed to tender a deed as required by the agreement of sale, and defendant therefore had a right to refuse to accept the deed as tendered and to recover the hand money paid and the amount expended in examination of title." We agree with this conclusion.

The assignments of error are overruled and judgment affirmed.